No. 16-16486-U

In the
# United States Court of Appeals
for the
# Eleventh Circuit

JAMES H. PRICE, ERIC ALAN ISAACSON,

Objectors & Appellants

vs.

DAVID S. MURANSKY, individually and on behalf of all others
similarly situated,

Plaintiff-Appellee

and

GODIVA CHOCOLATIER, INC., a New Jersey corporation,

Defendant-Appellee

On Appeal from the United States District Court
For the Southern District of Florida
Case No. 0:15-cv-60716-WPD

## EN BANC BRIEF OF APPELLEE DAVID S. MURANSKY

Keith J. Keogh
Michael Hilicki
Keogh Law, Ltd.
55 W. Monroe Street, Suite 3390
Chicago, IL 60603
Telephone:  (312) 726-1092

Scott D. Owens
Scott D. Owens, PA.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019

Bret L. Lusskin, Jr.
Bret L. Lusskin, Esq.
20803 Biscayne Blvd, Suite 302
Aventura, FL 33180

87936

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1-1, Appellee David S. Muransky lists the following persons and entities believed to have an interest in the outcome of this appeal:

**District Court Judges**

Dimitrouleas, Hon. William P., United States District Judge

Snow, Hon. Lurana S., United States Magistrate Judge

**Parties and Other Persons That Have an Interest in the Outcome**

Almeida, David S. – Counsel for Defendant-Appellee Godiva Chocolatier, Inc.

American Express Company, Nonparty

Benesch, Friedlander, Coplan & Aronoff LLP – Counsel for Defendant-Appellee Godiva Chocolatier, Inc.

Bret Lusskin, P.A. – Counsel for Plaintiff-Appellee Muransky

Chamber of Commerce of the United States of America – Amicus

Davis, John W., Counsel for Objector-Appellant Isaacson

Dykema Gossett PLLC, Counsel for Defendant-Appellee Godiva Chocolatier, Inc.

Franklin, Jonathan S. – Counsel for Six Flags Entertainment Corp. – Amicus

Godiva Chocolatier, Inc., Defendant-Appellee

Hilicki, Michael S., Counsel for Plaintiff-Appellee Muransky

Hogan Lovells US LLP – Counsel for Objector-Appellant Isaacson

Holt, Michael A., Counsel for Nonparty American Express Company

Huff, Kevin Brent – Counsel for Amici Chamber of Commerce, International Franchise Association, and National Retail Federation

International Franchise Association – Amicus

Isaacson, Eric Alan, Objector-Appellant

Katyal, Neal Kumar – Counsel for Objector-Appellant Isaacson

Kellog Hansen Todd Figel & Frederick, PLLC – Counsel for Chamber of Commerce, International Franchise Association, and National Retail Federation – Amici

Keogh Law, Ltd., Counsel for Plaintiff-Appellee David S. Muransky

Keogh, Keith J., Counsel for Plaintiff-Appellee David S. Muransky

Lacy, Price & Wagner, P.C., Counsel for Objector-Appellant Price

Law Office of John W. Davis, Counsel for Objector-Appellant Isaacson

Lusskin, Bret Leon, Jr., Counsel for Plaintiff-Appellee David S. Muransky

McDonald, W. Allen, Counsel for Objector-Appellant Price

Melendez, Brian, Counsel for Defendant-Appellee Godiva Chocolatier, Inc.

Muransky, David S., Plaintiff-Appellee

National Retail Federation – Amicus

Newman, Jeremy S. – Counsel for Chamber of Commerce, International Franchise Association, and National Retail Federation – Amicus

Norton Rose Fulbright US, LLP – Counsel for Six Flags Entertainment Corp. – Amicus

Nutley, C. Benjamin, Counsel for Objector-Appellant Isaacson

Oracle America Inc., Nonparty

Owens, Scott D., Counsel for Plaintiff-Appellee David S. Muransky

Price, James H., Objector-Appellant

Reich, Mitchell P. – Counsel for Objector-Appellant Isaacson

Scott D. Owens, P.A., Counsel for Plaintiff-Appellee David S. Muransky

Shook, Hardy & Bacon L.L.P., Counsel for Nonparty American Express Company

Siegal, Peter B. – Counsel for Six Flags Entertainment Corp. – Amicus

Six Flags Entertainment Corp. – Amicus

**STATEMENT REGARDING ORAL ARGUMENT**

The Court's order setting the briefing schedule in this *en banc* proceeding states the case will be set for argument during the week of February 24, 2020. Furthermore, pursuant to 11th Cir. R. 28-1(c), Appellee David S. Muransky requests oral argument, and submits oral argument will facilitate the Court's understanding of the issues presented.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ..................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS..................................................................................II

TABLE OF CITATIONS................................................................................ iv

JURISDICTIONAL STATEMENT ................................................................ 1

    A.    The District Court Had Subject Matter Jurisdiction .......................... 1

    B.    Appellate Jurisdiction. ...................................................... 1

INTRODUCTION ...................................................................................... 2

STATEMENT OF THE ISSUE ................................................................... 5

STATEMENT OF THE CASE AND FACTS.................................................. 5

    A    FACTA's Text, History, and Legislative Intent. ................................ 5

    B.    The Proceedings and Settlement Giving Rise to this Appeal. ............. 7

    C.    Isaacson and His Counsel Are "Professional Objectors." ................... 9

    D.    Proceedings in this Court ...................................................10

    E.    Standard of Review..........................................................11

SUMMARY OF THE ARGUMENT................................................................11

ARGUMENT............................................................................................14

    I.    Article III's Injury-in-Fact Requirement .................................................14

    II.    Godiva Exposed Dr. Muransky to an Increased Risk of Identity Theft...18

A. Congress Determined Disclosing More than the Last Five Digits of Account Numbers on Receipts Exposes Cardholders to Real Risk....18

B. Isaacson Cannot Demonstrate a Different Legislative Judgment.......24

C. Congress's Judgment Is Sufficient. .................................................27

1. Congress's Judgment Is Owed Substantial Deference.............27

2. Fact Assertions about the First Six Digits Made in Other Cases Are Wrong, Irrelevant, and Improper. ....................................28

3. Dr. Muransky Adequately Pleads the Risk of Harm................30

III. The Mishandling of Dr. Muransky's Account Information Bears a Close Relationship to a Common Law Breach of Confidence.........................35

IV. Dr. Muransky Was Forced to Safeguard the Receipt.............................39

V. Dr. Muransky Was Deprived of His Substantive FACTA Rights..........43

VI. The Amicis' Quarrel is with Congress. .................................................50

CONCLUSION .................................................................................................52

CERTIFICATE OF COMPLIANCE....................................................................53

CERTIFICATE OF SERVICE............................................................................54

# TABLE OF CITATIONS

**Cases**

*Altman v. White House Black Mkt., Inc.*,
2016 U.S. Dist. LEXIS 92761 (N.D. Ga. July 13, 2016) ............................46

*Alturo v. United States AG*, 716 F.3d 1310, (11th Cir. 2013) ...............................51

*Amason v. Kangaroo Exp.*
2013 U.S. Dist. LEXIS 32981 (N.D. Ala. Mar. 11, 2013) ..........................47

*Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018) ...................33, 49

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010).......................... 7

*Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990)..............................................49

*Braitberg v. Charter Comm.*, 836 F.3d 925 (8th Cir. 2016)...................................32

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)..........................................14

*Church v. Accretive Health, Inc.*
654 Fed. Appx. 990 (11th Cir. July 6, 2016)...............................................46

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .................................32, 41, 42

*Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009)..........17, 39, 40

*Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225 (11th Cir. 2019) ...........................28

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019)..........................16, 23

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975)...................................................39

*Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*
655 F.Supp.2d 1316 (S.D. Fla. 2009).........................................................35

*Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76 (2d Cir. 2017)..........33

*Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234 (4th Cir. 2019) ...............48

*Davis v. Apple Computer, Inc.*
    2005 Cal. App. Unpub. LEXIS 7190 (Cal. App. Aug. 12, 2005)................. 9

*Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 (11th Cir. 2019).................11

*Demarais v. Gurstel Chargo P.A.*, 869 F.3d 685 (8th Cir. 2017)............................16

*Deschaaf v. Am. Valet & Limousine, Inc.*
    234 F.Supp.3d. 964 (D. Ariz. 2017) ......................................................39

*DOC v. New York*, 139 S.Ct. 2551 (2019).........................................................30

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017)................... 38, 46, 48, 49

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*
    928 F.3d 95 (D.C. Cir. 2019) ...............................................................39

*Evans v. Sec'y, Fla. Dept. of Corrections*, 699 F.3d 1249 (11th Cir. 2012)...........48

*Frank v. Gaos*, 139 S.Ct. 1041 (2019)..............................................................44

*Fresno County Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63 (2d Cir. 2019)..........10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
    528 U.S. 167 (2000)............................................................................15

*Garcia v. United States*, 469 U.S. 70 (1984) ...............................................19, 24

*General Steel Prods. Co. v. Lorenz*, 204 F. Supp. 518 (S.D. Fla., 1962) ...............37

*Glassroth v. Moore*, 335 F.3d 1282 (11th Cir. 2003)..........................................40

*Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) .................................37

*Great Lakes Carbon Corp. v. Cont'l Oil Co.*
    219 F. Supp. 468 (W.D. La. 1963) ........................................................37

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114 (1982) ...44, 45, 49

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013) ...............45

*Huff v. Telecheck Servs.*, 923 F.3d 458 (6th Cir. 2019) .................................... 32-33

*In Re Horizon Healthcare Servs. Inc. Data Breach*
846 F.3d 625 (3d Cir. 2017).........................................................35, 43, 48

*In re Nickelodeon Cons. Privacy Litig.*, 827 F.3d 262 (3rd. Cir. 2016) .................36

*In re Toys "R" Us - Del., Inc. - Fair & Accurate Credit Transactions Act (FACTA)*
*Litig.*, 2010 U.S. Dist. LEXIS 133583 (C.D. Cal. Aug. 17, 2010) ...20, 29, 33

*In re Toys "R" Us - Del., Inc. - Fair & Accurate Credit Transactions Act (FACTA)*
*Litig.*, 300 F.R.D. 347 (C.D. Cal. 2013) ......................................................29

*Isaacson v. Niedermayer*, 200 A.3d 1205 (Del. 2018)...........................................10

*Jeffries v. Vol. Servs. Am.*, 928 F.3d 1059 (D.C. Cir. 2019) ...........................passim

*Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102 (2019) .............................29, 36, 37, 44

*Katz v. Donna Karan Co.*, 872 F.3d 114 (2d Cir. 2017) .................................passim

*Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*
150 F. Supp. 143 (E.D. Tex. 1956) ............................................................37

*Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004)...................................................51

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*
571 F.3d 672 (7th Cir. 2009).......................................................................35

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).....................................passim

*Macy v. GC Servs. L.P.*, 897 F.3d 747 (6th Cir. 2018) .............................28, 32, 41

*McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909 (8th Cir. 2014)......................29

*MedImmune, Inc. v. Genentech*, Inc., 549 U.S. 118 (2007) .................................31

*Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85 (2d Cir. 2019) ...................10

*Meyers v. Nicolet Rest of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016) ...........33, 49

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*
918 F.3d 1312 (11th Cir. 2019) .....................................................15, 34, 32

*Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019) ..........passim

*Nayab v. Capital One Bank USA*, 942 F.3d 480 (9th Cir. 2019) .............................48

*Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016) ....................16, 42, 49

*Noble v. Nev. Checker Cab. Co.*, 726 Fed Appx. 582 (9th Cir. Mar. 9, 2018) ........33

*Palm Beach Golf Ctr.-Boca v. John G. Sarris*
781 F.3d 1245 (11th Cir. 2015) .........................................................17, 40

*Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017) .....................46

*Prado-Steinman v. Bush*, 221 F.3d 1266 (11th Cir. 2000) .....................................35

*Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) ...............................31, 32, 41

*Ruk v. Crown Asset Mgmt., LLC*
2017 U.S. Dist. LEXIS 41797 (N.D. Ga. Mar. 22, 2017) ...........................42

*Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) ...................................16, 23, 39

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ...............................................passim

*Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269 (2008) ........................14

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .....................................30

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) .............................37

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994) ..........................23, 27, 28

*United States v. Students Challenging Reg. Agency Procs.*
412 U.S. 669 (1973)...............................................................17, 27, 31, 39

*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985) .....................27

*Warth v. Seldin*, 422 U.S. 490 (1975)..............................................................43

## Statutes and Rules

15 U.S.C. §1681c.......................................................................1, 5, 6, 20

15 U.S.C. §1681n...............................................................................6, 14

28 U.S.C. §1331...................................................................................... 1

Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. 110-241, 122 Stat. 1565 (Jun. 3, 2008).....................................................................passim

Fed. R. Evid. 201(b)..............................................................................30

## Other Authorities

39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). .....................................35

*Bin List* (https://www.bindb.com/bin-list.html)......................................16

*Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426 (1982) ..........36

*https://chargebacks911.com/bank-identification-numbers/* ..................................20

*https://securityaffairs.co/wordpress/54036/hacking/distributed-guessing-attack.html* (Dec. 3, 2016) .......................................................................22

*https://www.fbi.gov/investigate/white-collar-crime/identity-theft* .........................21

Newberg on Class Actions (4th ed. 2008) ........................................................ 9

Restatement (Second) of Torts §652D, §652E. (1977) .........................................39

S. Hrg. 109-1087, Testimony of Mari J. Frank (May 10, 2005) ...........................41

S. Rep. No. 108-166 (2003) .................................................................passim

The Fairness Hearing: Adversarial And Regulatory Approaches
53 UCLA L.REV. 1435 (2006)............................................................... 9

*www.creditcardvalidator.org/bank-of-america* ......................................21

# JURISDICTIONAL STATEMENT

## A. The District Court Had Subject Matter Jurisdiction.

The district court had jurisdiction under 28 U.S.C. §1331. Plaintiff's claim is based on a federal statute (15 U.S.C. §1681c(g)), and a panel of this Court found Plaintiff's complaint demonstrated his Article III standing (*Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019) ("*Muransky II*"), and Appellant Price agrees with that conclusion.

## B. Appellate Jurisdiction.

Although the panel found jurisdiction existed to challenge the settlement rulings as the panel found (*id.* at 1184), it is questionable whether Appellant Isaacson has standing to challenge Dr. Muransky's standing (the only issue being briefed here) because "Isaacson will cause himself injury if he succeeds because his monetary recovery—along with that of every class member—will be wiped out." *Id.* at 1199 (Jordan, J., concurring). Indeed, Isaacson's standing arguments here apply full force to his own claim.

# INTRODUCTION

This appeal follows approval of one of the largest all-cash settlements ever granted final approval under the Fair and Accurate Credit Transactions Act ("FACTA") asserting violations of FACTA's account-number truncation requirement. [Doc. 74, p.1].[1] The class response to the settlement was outstanding. About 65,000 persons filed claims to receive a share of the benefits (at least $60 each, not $12, as Mr. Isaacson suggests). Only 4 filed objections.

Isaacson is a class action attorney who has become a "professional objector," *i.e.*, one who objects to class settlements to try to negotiate a payoff to go away. Instead of exercising his right to opt out of the settlement here, he filed a generic objection to the proposed attorneys' fee award, proposed class representative service award, and proposed deadline for objecting to both awards. Then Isaacson and his lawyers sent Class Counsel a proposed agreement to govern his hoped-for payoff while his objection was pending. [Doc 72-1, Ex.7]

When Isaacson's bid for a quick payoff failed, he made the professional objector's standard next move. He appealed, to try to leverage the resulting delay into the hoped-for payoff, and indeed the objectors have held up payment to the class for years. Then Isaacson tried to increase his leverage on appeal by arguing for the

---

[1] Citations to "Doc." are to the docket number in the district court record. Citations to "Appx" are to the appendix filed with the briefs submitted to the panel.

first time Dr. Muransky lacked Article III standing, threatening to destroy the near-record settlement.

A panel of this Court found Dr. Muransky has standing, and overruled Appellants' settlement objections. *Muransky II*, 922 F.3d at 1192-97. The Court's order granting *en banc* review limits the briefing to Dr. Muransky's standing. But if Isaacson "wins" that issue, he just destroys the settlement for himself and the class, as his standing arguments apply full force to his own claim.

Furthermore, his standing arguments lack merit. *Spokeo* reaffirmed Article III's injury requirement is a low bar satisfied at the pleading stage by alleging any tangible or intangible harm, including mere exposure to a risk of real harm, so long as the asserted harm or risk is concrete or "real." This includes any intangible harm or risk of real harm that bears a close relationship to a harm recognized at common law or that has been identified by Congress, whose judgment is instructive, important, and owed deference. An "identifiable trifle" of harm is sufficient.

Consistent with the foregoing, the panel recognized Godiva's disclosure of two-thirds of Dr. Muransky's account number on his receipt in violation of FACTA satisfies Article III because: (1) it exposed him to a congressionally-determined risk of identity theft, and (2) it bore a close relationship to a common law breach of confidence, plus the Court found any effort to destroy (*i.e.* protect) the information on the receipt would constitute additional injury. *See Muransky II*, 922 F.3d at 1188,

and 1191-92. The D.C. Circuit agreed. *Jeffries v. Vol. Servs. Am.*, 928 F.3d 1059, 1064-67, and n.2 (D.C. Cir. 2019).

Isaacson's arguments to the contrary fail because: (1) the statute and legislative history confirm Congress found disclosure of any but the last five digits creates a real risk of harm, which is why FACTA prohibits that conduct instead of simply prohibiting disclosure of the full card number, (2) the first six digits of a card account number contain important information thieves can exploit that cannot be deduced from the card-issuing bank's name, like the card brand, card type, card level (gold, platinum, etc.), and industry program (airline, gas, etc.), plus having the first six digits makes it significantly easier to deduce the full account number; and (3) the Supreme Court holds it is not necessary to plead specific facts "demonstrating" harm or risk of harm, particularly when Congress already found a real risk of harm. Isaacson also ignores two of Dr. Muransky's injuries (the need to spend time indefinitely safeguarding the receipt, and deprivation of his substantive rights).

The panel got it right. Isaacson's co-appellant Price agrees. The panel's decision should be affirmed.

**STATEMENT OF THE ISSUE**

*Spokeo* confirms an asserted intangible harm or risk of harm satisfies Article III if it is real, and *Lujan* holds only general allegations of injury are needed at the pleading stage. Do the allegations of Dr. Muransky's amended complaint satisfy these standards considering they show Godiva exposed him to a congressionally-determined risk of identity theft, breached its trust obligation to protect his account data by giving thieves easy access to it, forced him to spend time indefinitely safeguarding his receipt, and deprived him of his substantive FACTA rights?

**STATEMENT OF THE CASE AND FACTS**

**A. FACTA's Text, History, and Legislative Intent.**

FACTA requires merchants to mask or "truncate" all but the last five digits of the card account number "upon any receipt provided to the cardholder at the point of the sale or transaction." [Doc. 16, ¶1; 15 U.S.C. §1681c(g)(1)].[2] Congress found this right "enhances the ability of consumers to combat identity theft[.]" S. Rep. No. 108-166 at p.3 (2003).

Specifically, Congress found a properly truncated receipt enables consumers to control access to "key card account information." *See* S. Rep. No. 108-166 at p.13.

---

[2] Isaacson's "Statement of the Case" claims the first six digits of a card account number only identify the card-issuing bank, which is wrong, plus nothing in the record supports that claim (instead he cites https://www.bindb.com/bin-list/html and *Katz v. Donna Karan Co.*, 872 F.3d 114 (2d Cir. 2017)). Accordingly, Dr. Muransky addresses Isaacson's claim in his argument.

5

First, it "limit[s] the number of opportunities for identity thieves to 'pick off' key card account information." *Id.*, p.13. Second, it "prevent[s] criminals from obtaining easy access to such key information." *Id.*, p.3 (brackets added).

Congress also gave consumers a means to enforce this right in federal court. 15 U.S.C. §1681n(a). But it limited the ability to recover statutory damages to "willful" violations (not "technical" violations). *Id.*

FACTA's truncation requirement is long-standing and well known. It has been part of FACTA since 2003. 15 U.S.C. §1681c(g)(3). It has never been amended. Its enactment was widely publicized. [Doc. 16, ¶11]. Visa, MasterCard, American Express issued contemporaneous bulletins about card number truncation. [*Id.*, ¶12-¶13]. Later, these same networks began contractually requiring card number truncation. [*Id.*, ¶14-¶15]. Finally, Congress gave merchants until 2006 – three years – to comply with the truncation rule. 15 U.S.C. §1681c(g)(3).

A different FACTA requirement not at issue here – the prohibition against printing card expiration dates on receipts – was purportedly less understood, prompting Congress to pass the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. 110-241, 122 Stat. 1565 (Jun. 3, 2008) ("Clarification Act"). *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 717 (9th Cir. 2010). The Clarification Act did not change the account-number truncation requirement. It just gave retroactive amnesty from liability for past willful violations of the expiration-date requirement.

*Bateman*, 623 F.3d at 717 (citing Clarification Act §3(a)). Despite compliance with the account-number truncation requirement, some merchants still printed expiration dates on receipts, resulting in hundreds of lawsuits. *See id.* Congress granted this amnesty because it found disclosing an expiration date, by itself, did not create a risk of identity theft. *Jeffries*, 928 F.3d at 1066 (citing Clarification Act §2(a)(6)).

In doing so, however, Congress reaffirmed its finding that disclosure of more than the last five digits of the card account number creates a real risk of identity theft and fraud, stating: "Experts in the field agree that *proper truncation of the card number*, by itself as required by [FACTA] ...., prevents a potential fraudster from perpetrating identity theft or credit card fraud." Clarification Act §2(a)(6) (brackets and italics added).

### B. The Proceedings and Settlement Giving Rise to this Appeal.

Dr. Muransky alleged Godiva violated his and its other customers' FACTA truncation rights by disclosing ten digits, *i.e.*, about two-thirds, of their credit and debit card numbers on its transaction receipts, exposing them to an elevated risk of identity theft. [Doc. 16, ¶1, ¶27, and ¶62].[3]

On May 26, 2015, Godiva moved to dismiss for failure to state a claim, and Dr. Muransky responded by amending his complaint. [Doc. 16]. On June 23, 2015,

---

[3] Throughout his statement of the case, Isaacson describes Godiva's FACTA violation as "technical," but this unsubstantiated characterization is argument, not fact. Plus, Godiva disclosed nearly *two-thirds* of Dr. Muransky's account number.

Godiva again moved to dismiss for failure to state a claim, the motion was fully briefed, and the district court denied the motion. [Docs. 21, 26]. On September 16, 2015, Godiva filed its answer and defenses. [Doc. 29].

Dr. Muransky took discovery. [Doc. 74, p.2]. This included the scope of the putative class, and what caused the alleged violations. [*Id.*].

The parties attended a full-day mediation before a well-regarded third-party mediator. [*Id.*]. The case did not settle at the mediation, but the parties kept negotiating over several months, eventually reaching an agreement. [*Id.*]. Unlike FACTA settlements that provide coupons or store credits, this settlement is all cash, non-reversionary, and one of largest in FACTA history. [Doc. 74, p.1, n.1].

On January 25, 2016, the Court granted Dr. Muransky's motion to certify the settlement class, preliminarily approved the settlement, and directed notice of the settlement be mailed to class members. [Docs. 39, 40]. Class Counsel then spent months working to identify and locate the class. [Docs. 41, 45, 47, 48, 52, 54, 56]. The claims administrator received approximately 65,000 claims. [Doc. 66, p.9 and n.2]. By contrast, only 4 persons (including Appellants) filed objections. [Docs. 58-61]. No governmental entity objected in response to the CAFA notice. [Doc. 43]. Isaacson filed an objection challenging the proposed attorneys' fee and incentive awards, and timing of the notice. [Doc. 59]. He did not challenge the adequacy of the $6,300,000.00 settlement amount. [*Id.*]. Later, he obtained leave to file a

supplemental brief, giving him an additional opportunity to address the fee request. [Doc. 83]. None of his filed objections disputed Dr. Muransky's standing.

### C. Isaacson and His Counsel Are "Professional Objectors."

Commentators observe objecting to class settlements has become a "big business." *Newberg on Class Actions* §11:55, p.168 (4th ed. 2008). Professor William Rubenstein wrote "[t]his part of the profession has arguably attracted lawyers more interested in coercing a fee than in correcting a wrong." *The Fairness Hearing: Adversarial and Regulatory Approaches*, 53 UCLA L. Rev. 1435, 1459 (2006).

The magistrate found Appellants and their counsel, all lawyers, to be "aptly characterize[d] … as 'professional objectors' who threaten to delay resolution of class action cases unless they receive extra compensation." [Doc. 82, p.5]. That characterization stems from numerous other objections they filed to class settlements. [Doc. 74, pp.12-13]. For example, Isaacson's counsel "'confidentially settled or attempted to confidentially settle putative class actions in return for payment of fees and other consideration directly to them.'" *Davis v. Apple Computer, Inc.*, 2005 Cal. App. Unpub. LEXIS 7190, *4 (Cal. App. Aug. 12, 2005).

Likewise, Isaacson and his counsel sent Dr. Muransky a proposed stipulation to govern their hoped-for payoff. [Doc. 72-1, Ex.7].[4]

On September 28, 2016, the district court granted final approval, finding the settlement "fair, reasonable and adequate ..., and in the best interest of the Settlement Class[.]" [Doc. 99, p.3].[5] At no time in the district court proceedings was standing challenged. Instead, Isaacson's counsel just mentioned the issue at the final approval hearing and, when the Court asked if the case should be dismissed for lack of jurisdiction, said, "I'm not saying necessarily that that's what should happen." [Appx., p.853 (Tr.), p.34:11-12].

### D.    Proceedings in this Court

Isaacson and Price appealed. At this Court's request, the parties initially briefed whether the Court had jurisdiction over the appeals in light of Appellants' failure to intervene in the district court.

Then the appeal's merits were briefed and argued. The issues raised on appeal included Dr. Muransky's standing and Appellants' settlement objections.

---

[4] Isaacson continues to be a frequent objector. *E.g.*, *Fresno County Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63 (2d Cir. 2019); *Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85 (2d Cir. 2019), *cert. denied*, 2019 WL 6833426 (Dec. 16, 2019); *Isaacson v. Niedermayer*, 200 A.3d 1205 (Del. 2018) (review denied).

[5] Although the magistrate found Appellants are professional objectors, the district court expressly declined to consider that factor. [Doc. 99, p.6, ¶11(l)].

On October 3, 2018, the Court issued an opinion finding Dr. Muransky has standing, and affirming the district court's settlement rulings.

On April 22, 2019, the Court issued a new opinion, again finding Dr. Muransky has standing, and affirming the district court's rulings.

On October 4, 2019, this Court granted Isaacson's petition for en banc review, vacating the panel's opinion. On October 25, 2019, the Court issued an order limiting briefing to the issue of Dr. Muransky's standing**.**

### E.    Standard of Review

Whether Dr. Muransky's complaint alleges an Article III injury is a question of law reviewed *de novo*. *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

Article III's "injury in fact" requirement is a low bar. It is cleared by any tangible or intangible harm or risk of harm so long as the asserted harm or risk is "concrete," *i.e.*, real, regardless of how small the injury is. Moreover, at the pleading stage, "general allegations" of injury are sufficient.

Dr. Muransky's complaint demonstrates Godiva's FACTA violation caused him a concrete harm or risk of harm in four ways. First, Godiva's exposure of the first six and last four digits (nearly two-thirds) of Dr. Muransky's account number on the receipt exposed him to real risk of identity theft and fraud. Congress explicitly

found "proper truncation" of the first six and other digits FACTA requires masked is needed to prevent identity theft and fraud, the Supreme Court holds this judgment is instructive, important, and entitled to deference, and thus Congress's judgment is sufficient here because no evidence contradicts it.

Contrary to Isaacson's unsupported claims, Congress was right to require truncation of the first six digits because: (1) they reveal details about the consumer's account identity thieves can exploit, such as the card brand (*e.g.* Visa, MasterCard, American Express), card type (credit or debit), card level (gold, platinum, professional-business card), and industry program (*e.g.* airline or gas), *i.e.*, not just the card-issuing bank's name; (2) a thief cannot "reverse-engineer" the first six digits from the issuing-bank's name because banks issue cards using multiple six-digit combinations, and thus a thief who identifies a card's issuing bank will not know which combination is assigned to that card; and (3) their disclosure with the last four digits gets a thief two-thirds of the way to learning the consumer's full card number, making it easier to deduce the rest using computerized distributed-guessing attacks.

Second, Godiva's disclosure of Dr. Muransky's account information on the receipt is substantively similar to the common law tort of breach of confidence because FACTA imposes the same trust obligation on handling card account data the tort imposes for sensitive information generally, disclosing that information on

the receipt breaches this trust obligation, and *Spokeo* holds harms bearing a close relationship to those actionable at common law are concrete.

Third, Godiva's exposure of Dr. Muransky's account information on the receipt forced him to spend time indefinitely safeguarding the receipt, to prevent further disclosure. This is no less an imposition than other harms this Court has found satisfy Article III, including needing to show ID, altering one's path through a building to avoid a monument, and a fax machine being momentarily occupied.

Finally, Godiva's deprivation of Dr. Muransky's substantive FACTA rights is a concrete injury. This Court recognizes the deprivation of one's substantive rights alone satisfies Article III, and FACTA rights are substantive because they exist to protect and be enforced by a specific group of private individuals (cardholders), not the public generally.

**ARGUMENT**

## I.      Article III's Injury-in-Fact Requirement

To have standing, Dr. Muransky need only allege an "injury in fact" that is "fairly traceable" to Godiva's actions, and "redressable" by the Court. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, at 1547 (2016).[6] Isaacson does not dispute Dr. Muransky's asserted injuries are fairly traceable to Godiva's FACTA violation, or that they are redressable because FACTA permits him to recover statutory damages. *See* 15 U.S.C. §1681n(a); and, *e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 679 (2016) ("All agree that at the time Gomez filed suit, he had a personal stake in the litigation ... [because he] alleged that he suffered an injury in fact when he received unauthorized text messages … [and requested] statutory damages") (Roberts, C.J., dissenting). The only issue is whether Dr. Muransky incurred an "injury in fact."

---

[6] Isaacson claims Article III standing aims to prevent the judicial process from usurping the powers of the political branches, as when "a private individual [tries to] invoke the judicial power to determine the validity of executive or legislative action…" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 575 (1992) (citation omitted). But that concern only relates to general-grievance cases, like "citizen" suits challenging how tax dollars are spent. *See id.* at 574-75. It is not a concern when, as here, "a private party seeks to enforce only his personal rights against another private party." *Jeffries*, 928 F.3d at 1070 (Rogers, J., concurring) (quoting *Spokeo*, 136 S.Ct. at 1551, 1553 (Thomas, J., concurring)). Article III standing also ensures plaintiffs have a "stake" in the case such that they are motivated to properly present the issues (*see Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 288 (2008)), but that concern is met too because Dr. Muransky can recover statutory damages. 15 U.S.C. §1681n(a).

At the pleading stage (when this case settled), "'general factual allegations' [of injury] will suffice." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (brackets added) (quoting *Lujan*, 504 U.S. at 561). The panel found Dr. Muransky's complaint demonstrates multiple Article III injuries, including exposure to an increased risk of identity theft, as determined by Congress, and disclosure of his sensitive account information in breach of trust, akin to a common law breach of confidence. *See Muransky II*, 922 F.3d at 1188, 1191-92.[7]

*Spokeo* reaffirms that to constitute an "injury in fact," an asserted injury must be "concrete and particularized." *Spokeo*, 136 S.Ct. at 1548 (citing *Lujan*, 504 U.S. at 560). Isaacson does not dispute Dr. Muransky's asserted injuries are particularized, as he alleges *he* was harmed by disclosure of *his* account information in violation of *his* FACTA rights. *See Muransky II*, 922 F.3d at 1185.

An injury is "concrete" if it is real or *de facto*, *i.e.*, not abstract. *Spokeo*, 136 S.Ct. at 1548. This is a low bar. It is cleared not only by economic or tangible injuries, but also by non-economic, intangible injuries. *See id.* at 1549 ("we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."); and *e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

---

[7] The Court also recognized efforts to protect the receipt (to prevent further disclosure) also satisfy Article III. *See id.* at 1192. Likewise, the original panel opinion suggested, without deciding, that deprivation of Dr. Muransky's substantive FACTA rights is itself an injury. *See Muransky I*, 905 F.3d 1200, 1210, n.4 (11th Cir. 2018). Both of these injuries are demonstrated below.

528 U.S. 167, 183 (2000) (a river's lessened "aesthetic" value is an injury in fact). Indeed, exposure to a "risk of real harm" is enough. *Demarais v. Gurstel Chargo P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) ("concrete injury can be 'the risk of real harm.'") (quoting *Spokeo*, 136 S.Ct. at 1549); *see also Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1003 (11th Cir. 2016) (alleging "some harm or risk of harm from the statutory violation" can meet Article III).

An asserted intangible harm's concreteness can be established by showing it is recognized by Congress, or similar to a harm recognized at common law:

> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. [citation omitted]. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.

*Spokeo*, 136 S.Ct. at 1549.

Importantly, however, concreteness does not turn on the size or extent of the injury. No "quantity" of harm is needed, so long as the harm or risk of harm is real. *Salcedo v. Hanna*, 936 F.3d 1162, 1172-73 (11th Cir. 2019) ("There is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be.") (citation omitted); *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) ("While

16

those injuries might not be significant in the grand scheme of things, they are sufficiently concrete and particularized for Article III standing.").

Indeed, an "identifiable trifle" of injury satisfies Article III. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) (citing *United States v. Students Challenging Reg. Agency Procs. (SCRAP)*, 412 U.S. 669, 689, n.14 (1973)). As the Supreme Court explains:

> "Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to distinguish a person with a direct stake in the outcome of a litigation -- even though small -- from a person with a mere interest in the problem. We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, see *Baker v. Carr*, 369 U.S. 186 …. "The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation."

*Id.* (citations omitted); *see also*, *e.g.*, *Palm Beach Golf Ctr.-Boca v. John G. Sarris D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015) (fax machine tied up for "one minute" sufficient); *Common Cause*, 554 F.3d at 1351-52 (momentary need to show ID sufficient).

Finally, as Isaacson concedes, the violation of a statute – by itself – can supply the requisite harm. *Spokeo*, 136 S.Ct. at 1549; Isaacson Br. at p.19 ("the statutory violation itself may entail an 'intangible injur[y] that is 'nevertheless . . . concrete.'") (brackets and ellipses in original)). Under these broad standards, Dr. Muransky's

allegations demonstrate Godiva's disclosure of the majority his account number on the receipt caused him multiple concrete injuries.

## II. Godiva Exposed Dr. Muransky to an Increased Risk of Identity Theft

### A. Congress Determined Disclosing More than the Last Five Digits of Account Numbers on Receipts Exposes Cardholders to Real Risk

As noted, *Spokeo* reaffirms exposure to a "risk of real harm" alone can satisfy Article III, and "Congress is well positioned" to identify risks of harm that are concrete (*i.e.* real). *Spokeo*, 136 S.Ct. at 1549. Indeed, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan,* 504 U.S. at 580).

Congress did so with FACTA. It found transaction receipts disclosing more than the last five digits of credit or debit card numbers expose consumers to a material risk of identity theft. *See Jeffries*, 928 F.3d at 1065 ("We also give weight to the Congress's determination that printing too much credit card information on a receipt creates a 'real' or 'de facto' harm."); *Muransky II*, 922 F.3d at 1188 ("After hearing from experts on the matter, Congress decided to set the tolerable level of risk at printing the last five digits of a card number."). Accordingly, Godiva's subjection of Dr. Muransky to this congressionally-determined risk of real harm, by memorializing far more than the last five digits of his account number on his receipt, is a concrete injury. *Jeffries*, 928 F.3d at 1065; *Muransky II*, 922 F.3d at 1187.

Isaacson claims Congress made no such judgment, but he is playing ostrich. The official Senate report expressly finds FACTA's truncation requirement "enhances the ability of consumers to combat identity theft[,]" "limit[s] the number of opportunities for identity thieves to 'pick off' key card account information[,]" and "prevent[s] criminals from obtaining easy access to such key information." S. Rep. No. 108-166 at pp.3, 13 (2003) (brackets added).[8] In other words, Congress repeatedly found the first six and other digits FACTA requires masked are "key" data whose disclosure on receipts materially increases the risk of theft by giving criminals excess "opportunities" to find them, and "easy access" to them. *See id.*; *see also Jeffries*, 928 F.3d at 1065 (quoting S. Rep. No. 108-166 at p.3).[9]

Congress doubled-down on these findings in the Clarification Act. *See Muransky*, 922 F.3d at 1187. Reaffirming its determination that all but the last five account digits must be masked to prevent theft, Congress stated "[e]xperts in the field agree that *proper truncation of the card number*, … as required by [FACTA] …, prevents a potential fraudster from perpetrating identity theft or credit card

---

[8] "[T]he authoritative source for finding the Legislature's intent lies in the Committee reports on the bill…" *Garcia v. United States*, 469 U.S. 70, 76 (1984).

[9] Isaacson claims there is no congressional judgment deeming each technical violation of FACTA a concrete harm, but Dr. Muransky alleges a willful violation, not a "technical" violation. [Doc. 16, ¶1]. Again, Godiva disclosed nearly *two-thirds* of his sixteen-digit account number, including the "key information" whose disclosure Congress specifically found to cause identity theft. *See* S. Rep. 108-166, p.3; and Clarification Act §2(a)(6) ("proper truncation" needed).

fraud." *Id.* at 1187 (quoting Clarification Act at §2(a)(6) (italics added)). "Proper truncation" as required by FACTA means *all* but the last five digits (which, again, necessarily includes the first six). 15 U.S.C. §1681c(g)(1). Thus, Congress expressly determined the failure to mask the first six digits increases the cardholder's risk of identity theft. *See Jeffries*, 928 F.3d at 1065; *Muransky II*, 922 F.3d at 1188.

Isaacson baldly asserts "[FACTA] affirmatively suggests" Congress did not think disclosure of the first six digits on the receipt causes any risk, but he does not even try to square this claim with FACTA's text or official legislative history, which categorically bar disclosing the first six digits and demonstrates Congress found a real risk of theft. Instead, he claims Congress could not have meant what it said because allegedly the first six digits are "equivalent" to the name of the bank that issued the card, and FACTA does not prohibit disclosing bank names on receipts. This is just argument, not proof of congressional intent.[10] Plus it is wrong.

For starters, the first six digits reveal other details about the consumer's account thieves can exploit. These include the card brand (*e.g.* Visa, MasterCard), card type (credit or debit), card level (black, platinum, business), and industry program (*e.g.* airline card or gas card). [*See https://chargebacks911.com/bank-*

---

[10] Isaacson cites *Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114 (2d Cir. 2017); and *In re Toys "R" Us - Del., Inc. - Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 U.S. Dist. LEXIS 133583 (C.D. Cal. Aug. 17, 2010), but neither case confronts S. Rep. 108-166 or §2(a)(6) of Clarification Act's statement that "proper truncation" as required by FACTA is needed to prevent identity theft.

*identification-numbers/* at "The Major Industry Identifier" and "How Bank Identification Numbers Help" ("The BIN/IIN provides merchants with a lot of other information besides just the issuing entity.")]. This information enables thieves to conduct "phishing" inquiries, *i.e.*, to call or email the consumer posing as the store or bank, using the non-public information to convince the consumer the call is legitimate, to extract more information. [*See https://www.fbi.gov/investigate/white-collar-crime/identity-theft* (fraudsters use "financial account numbers," and "[s]ome of the more prevalent schemes … include suspicious e-mail and/or phishing attempts to trick victims into revealing personally identifiable information")]; *see also Redman v. Radioshack*, 768 F.3d 622, 626 (7th Cir. 2014) (the disclosed account information can "bolster the credibility of a criminal" in "phishing" scams).

Further, the first six digits and issuing bank's name are not interchangeable. While the first six digits identify the card-issuing bank, the reverse is not true because banks use multiple first-six digit combinations to issue cards, sometimes hundreds. [*www.creditcardvalidator.org/bank-of-america* (*e.g.* Bank of America uses 246 first-six combinations)]. Thus, a receipt disclosing a bank name would not enable a thief to "reverse-engineer" the first six digits of the card because the thief will have no way to know *which* first-six digit combination is assigned to that card. Accordingly, Congress had good reason to bar disclosure of the first six digits, but not the card issuer's name.

Isaacson's argument also ignores disclosing the first six digits along with the last four makes it significantly easier for thieves to learn the full card number. *See Redman*, 768 F.3d at 626 ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information and thus be able to make purchases..."). The thief is two-thirds of the way to the full number, the rest of which can be deduced by conducting "distributed guessing attacks," *i.e.*, using a computer to automatically and systematically attempt multiple online purchases with different number combinations. [*https://securityaffairs.co/wordpress/54036/hacking/distributed-guessing-attack.html* (Dec. 3, 2016) ("Distributed Guessing Attack to hack VISA cards in just six seconds")].[11]

Expert proof confirming each of these points has been introduced in other FACTA cases. [*See*, *e.g*, *Keim v. Trader Joes Co.*, No. 9:19-cv-81025-RLR (S.D. Fla.), ECF 21-1 (Expert Report), at ¶9-¶16, and ¶20-¶21]. Had this case not settled at the pleading stage, Dr. Muransky would have introduced the same evidence. In short, Isaacson's misstatements about what the first six digits mean do not show

---

[11] Ignoring Congress (and again going beyond the record), Isaacson and amici suggest the account number does not enable fraud because thieves will not have the CVV code or billing address, but many merchants (like Amazon) do not require CVV codes, and there is no showing merchants universally or even generally require or verify billing-address information.

Congress "must have" thought there is no harm in disclosing that information on receipts.[12]

*Lujan* and *Salcedo*, which Isaacson cites as instances in which Congress made no finding of harm, are not comparable to this case. The statute in *Lujan* required government agencies to "consult" with the Secretary of the Interior when acting to avoid harming endangered species, but the Court did not identify any finding by Congress that failure to consult caused or risked real harm (to the plaintiff or otherwise). *See Lujan*, 504 U.S. at 558, and 572-73. Likewise, in *Salcedo* the plaintiff argued Congress found unsolicited text messages harmful when it passed the Telephone Consumer Protection Act (TCPA), but the Court found the TCPA "completely silent on the subject of unsolicited text messages." *Salcedo*, 936 F.3d at 1169; *see also Cordoba*, 942 F.3d at 1270 ("In *Salcedo*, we focused heavily on the unique features of text messages.").

There is no silence here. As shown, Congress expressly found masking "key" parts of the account number on the receipt (including the first six digits), and "proper truncation," are necessary to prevent theft. Accordingly, Godiva's disclosure of the

---

[12] Although the foregoing demonstrate Congress had good reason to require truncation of the first six digits, Congress does not need to specifically demonstrate disclosing that information on the receipt creates a real risk of identity theft. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 666 (1994) ("Congress is not obligated, when enacting its statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review.").

first six digits of Dr. Muransky's account number demonstrates a risk of real harm as determined by Congress, satisfying Article III. *See Jeffries*, 928 F.3d at 1065; *Muransky II*, 922 F.3d at 1188.

### B. Isaacson Cannot Demonstrate a Different Legislative Judgment

Unable to show Congress made "no judgment" about the risk of disclosing the first six digits, Isaacson claims Congress was only concerned about disclosing full account numbers on receipts, citing statements from individual legislators and non-legislators. But none say that.[13] None even discuss improperly truncated receipts, let alone contradict Congress's official report (S. Rep. 108-166) or the Clarification Act's confirmation that "proper truncation," as required by FACTA, is what prevents theft. Clarification Act §2(a)(6).

Likewise, none support Isaacson's supposition that Congress decided to require truncation of all but the last five digits simply because California did so. Congress made its own findings. S. Rep. 108-166 at pp.3, 13; Clarification Act §2(a)(6) ("Experts in the field agree …"). In any event, Isaacson cannot ignore the official report and statutory text in favor of individual statements, because individuals do not dictate *legislative* intent. *See Garcia*, 469 U.S. at 76 ("the authoritative source for finding the Legislature's intent lies in the Committee

---

[13] For example, some legislators unremarkably noted some merchants were disclosing full card numbers.

Reports on the bill… We have eschewed reliance on the passing comments of one Member and casual statements from the floor debates.") (citations omitted).

Isaacson also cites the Clarification Act's statement that it was passed in response to a wave of FACTA lawsuits alleging no harm. But that statement *exclusively* pertains to cases alleging nothing more than a failure to mask a card expiration date. *See Muransky II*, 922 F.3d at 1187. That is why the Clarification Act's only change was to temporarily limit liability in cases only alleging a failure to mask the card expiration date. *See id.*

The Clarification Act expresses no concern about lawsuits alleging a failure to properly truncate the account number. *See id.* ("Congress granted no amnesty to merchants who printed more than the permitted number of digits."); *Jeffries*, 928 F.3d at 1068 (Congress "left the truncation requirement and enforcement mechanism untouched."). To the contrary, it reaffirms Congress's determination that violating the truncation requirement creates a real risk of identity theft, stating "'proper truncation of the card number … as required by' FACTA" (which necessarily includes the first six digits) is what "prevents a potential fraudster from perpetrating identity theft or credit card fraud." *Id.* (quoting Clarification Act §2(a)(6)).

Isaacson also cites the Third Circuit's statement in *Kamal*, based on the Clarification Act, that Congress did not view all FACTA violations as involving actual harm or the risk of actual harm. But that does not show Congress thought any

violation of the account-number truncation requirement is harmless. To the contrary, the Clarification Act *specifies which* cases Congress viewed as not presenting any risk of harm, *i.e.,* only those alleging nothing but a failure to mask the card expiration date. *Jeffries*, 928 F.3d at 1065-66 (citing Clarification Act §2(a)(4)-(5)).

According to Isaacson, *Kamal* read this language to mean Congress thinks FACTA violations cause no harm unless identity theft results (*Muransky II*, 922 F.3d at 1188 (citing *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 113 (2019)), but nothing in the Clarification Act says that. Indeed, this reading makes no sense because FACTA does not require actual theft or fraud, and the conduct it actually outlaws (disclosing card data on the receipt) necessarily occurs *before* any theft or fraud. *See Jeffries*, 928 F.3d at 1067, n.3 ("FACTA (1) does not prohibit identity theft, (2) imposes a truncation duty at the point of sale when identity theft cannot yet have occurred and (3) does not make liability contingent on a showing of actual harm.").

Plus, once again, the Clarification Act expressly reaffirms FACTA exists to *prevent* theft and card fraud caused by failing to properly truncate account numbers, not *remedy* it. Clarification Act §2(a)(1), (6) (FACTA aims to "prevent criminals from obtaining access to consumers' private financial and credit information to reduce identity theft and credit card fraud," and "prevents a potential fraudster…").[14]

---

[14] Plus, if actual theft was a prerequisite, it would make the statutory damages remedy anomalous (if not superfluous), as claimants would have significant actual damages. Amici claim the law limits a victim's financial liability to $50, but this

26

Thus, plainly, Congress's concern was the real risk of harm it found caused by disclosure, on the receipt, of the account number data FACTA requires masked.

### C. Congress's Judgment Is Sufficient.

#### 1. Congress's Judgment Is Owed Substantial Deference

The Supreme Court dictates that Congress's judgment is "instructive and important" to identifying concrete injuries, and entitled to "substantial deference." *Spokeo*, 136 S.Ct. at 1549 ("instructive and important"); *Turner*, 512 U.S. at 665 ("substantial deference"); *see also*, *e.g.*, *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 330 n.12 (1985) ("those findings are of course entitled to a great deal of deference."). These commands are meaningless if following Congress's judgment is optional. *See Muransky II*, 922 F.3d at 1189 ("We do not read *Spokeo* as giving courts a license to reject the standard set by Congress …").

Yet, because he cannot demonstrate the absence of Congressional judgment or that Congress found something different than the failure to mask all but the last five account digits creates a real risk of theft, Isaacson "invites the court to 'substitute [its] judgment for Congress's" and decide for itself whether it thinks the risk is real. *Jeffries*, 928 F.3d at 1070 (Rogers, J., concurring) (quoting *Muransky II*, 922 F.3d at 1188). This is improper because the reason Congress's judgment is instructive,

---

ignores the far greater extensive hassle and anxiety identity theft causes its victims. Plus, "limited harm" is still harm, thus satisfying Article III. *SCRAP*, 412 U.S. at 689, n.14 ("an identifiable trifle" is sufficient).

important, and entitled to substantial deference is because "Congress is far better equipped than the judiciary to amass and evaluate the vast amount of data bearing upon" legislative questions. *See Turner*, 512 U.S. at 665 (internal quotation omitted).

Indeed, there is no basis in the record to even question Congress's judgment here. This case settled at the pleading stage, no "factual" challenge to Dr. Muransky's standing was made below, and thus no evidence was presented to contest standing. *See Muransky II*, 922 F.3d at 1184 ("we are here evaluating standing at the motion to dismiss stage."), and at 1190 ("There is nothing in the record before us to support a finding that the first six digits identify a card issuer or that printing the first six digits poses no risk of identity theft."). Accordingly, Congress's judgment is controlling.

### 2. Fact Assertions about the First Six Digits Made in Other Cases Are Wrong, Irrelevant, and Improper.

Unable to cite proof, Isaacson cites "fact" assertions in *Katz* and *Toys "R" Us* to try to support his argument that disclosing the first six digits of the card cannot cause harm. As shown above, that is wrong because a thief can exploit the first six digits in multiple ways. [*See* above pp.20-21].

Fact assertions in *Katz* and *Toys* are also irrelevant because they are beyond Dr. Muransky's complaint. *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1235 (11th Cir. 2019) ("we typically confine our standing analysis to the four corners of the complaint"); *Macy v. GC Servs. L.P.*, 897 F.3d 747, 759 (6th Cir. 2018) (same,

in a case discussing statutory rights and the judgment of Congress)). Indeed, it would violate due process to make Dr. Muransky defend his standing on appeal against evidence he never got to see or refute.[15] *See Muransky II*, 922 F.3d at 1190 ("We will not impose a factual finding made in the Southern District of New York upon Mr. Muransky ...") (citing *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) ("Judicial notice of another court's opinion takes notice of the existence of the opinion, … but not of the facts summarized in the opinion.")).

Plus the assertions in *Katz* and *Toys* are dubious, even without contrary proof. In *Katz*, there was no discovery, the defendant's evidence was uncontested, and the fact-finding procedure was unusually limited. *See Katz*, 872 F.3d at 120 ("the fact-finding procedure below was more abbreviated than might be conventionally expected or desirable…"); *Muransky*, 922 F.3d at 1190 (noting "the Second Circuit's concern about the fact-finding procedures in that case."). Likewise, *Toys* did not discuss "harm" to decide standing, and ultimately it abandoned the issue as irrelevant. *Toys "R" Us*, 2010 U.S. Dist. LEXIS 5071073 at *2-3; and *see Toys "R" Us*, 300 F.R.D. 347, 364 (C.D. Cal. 2013) ("harm" not relevant to class certification).

---

[15] As noted above, Dr. Muransky would have presented expert proof demonstrating how the first six digits reveal information personal to the cardholder's account, and how that information can be exploited to commit fraud. [*See* pp.20-21, above].

Finally, Isaaacon's claim that the first six digits "only" disclose the card-issuing bank is not just incorrect, it is unsupported.[16] Accordingly, Isaacson cannot rely on *Katz* or *Toys* to argue Congress's judgment is "wrong."

### 3. Dr. Muransky Adequately Pleads the Risk of Harm

Unable to borrow facts from elsewhere, Isaacson resorts to speculating the risk of harm caused by disclosing two-thirds of Dr. Muransky's account number on the receipt is too remote, claiming the risk must be "imminent" or "certainly impending" to be material, and that Dr. Muransky did not plead sufficient facts to make that showing. This argument fails on multiple fronts.

First, it misstates the governing standards. A risk of harm need not be "imminent" or "certainly impending." It is enough if "there is a substantial risk the harm will occur." *DOC v. New York*, 139 S.Ct. 2551, 2565 (2019) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). In other words, the risk must be real, not speculative. *See Spokeo*, 136 S.Ct. at 1548 ("actual *or* imminent, not

---

[16] The non-case sources Isaacson cites in footnote 3 state the first six digits identify the card-issuer, but none state that is the "only" information those digits reveal. *See e.g. Bin List* (https://www.bindb.com/bin-list.html). Isaacson claims "numerous judicial opinions" found the first six digits "only" disclose the card issuer, but he only cites *Katz*, which cites its own district opinion (which just cites *Bin List*). *See Katz*, 872 F.3d at 118 (citing *Katz v. Donna Karan, Int'l*, 2017 U.S. Dist. LEXIS 75299, *3-4 (S.D.N.Y. 2017)). Likewise, subsequent cases parroting this "finding" ultimately rely on *Katz*. Accordingly, Isaacson cannot show his fact assertions are "generally known" and capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

conjectural or hypothetical") (italics added) (quoting *Lujan*, 504 U.S. at 560);

*MedImmune, Inc. v. Genentech*, Inc., 549 U.S. 118, 129 (2007) ("genuine threat");

and, *e.g.*, *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1117 (9th Cir. 2017) (credit reporting

errors presented a "sincere risk of harm."), *cert. denied*, 138 S.Ct. 931 (2018).[17]

Second, Congress already found the risk substantial. Again, it specifically

found the first six and other digits FACTA requires masked are "key information"

whose disclosure on receipts gives criminals "easy access" and too may

"opportunities" to see it, and that "[e]xperts in the field agree that proper truncation

of the card number" on receipts is needed to prevent theft and fraud. *See* S. Rep.

108-166 at pp.3, 13; Clarification Act §2(a)(6). That Congress took the trouble to

make these findings and pass FACTA after hearing experts on the subject further

confirms it found the risk substantial. *See Redman*, 768 F.3d at 626 ("identity theft

is a serious problem, and FACTA is a serious congressional effort to combat it.").

---

[17] "Substantial risk" does not mean "likely." For example, the Supreme Court held a plaintiff adequately pled standing in a suit to enjoin a railroad rate increase by alleging "a general rate increase would allegedly cause increased use of nonrecyclable commodities as compared to recyclable goods, thus resulting in the need to use more natural resources to produce such goods, some of which resources might be taken from the Washington area, and resulting in more refuse that might be discarded in national parks in the Washington area." *SCRAP*, 412 U.S. at 688. The Court did not require the plaintiff show the "likelihood" of these events coming to pass, despite the railroads' argument the plaintiff "could never prove that a general increase in rates would have this effect." *Id.*

Third, Dr. Muransky does not need to plead facts further substantiating this risk because Congress's judgment is already "instructive and important" (*Spokeo*), and owed "substantial deference" (*Turner*). *See Muransky II*, 922 F.3d at 1188 ("this is a case in point for Congress's relatively greater institutional competence to draw the line between a concrete injury and non-actionable risk.") (citing *Spokeo*, 136 S.Ct. at 1549). Isaacson claims *Kamal* shows otherwise, but *Kamal* does not reconcile itself with *Spokeo* or *Turner*. It pays lip service to the rule that Congress's judgment is instructive and important, but then evaluates the risk based only on the plaintiff's allegations, as if Congress said nothing. *See Kamal*, 918 F.3d at 116-117.[18] Again, Congress found a risk of real harm. *Jeffries*, 928 F.3d at 1065 ("We also give weight to the Congress's determination that printing too much credit card information on a receipt creates a 'real' or '*de facto*' harm.").[19]

---

[18] *Kamal* also imposed a heightened pleading standard at odds with this Court's authority. *Compare Kamal*, 918 F.3d at 116 (asking if complaint "clearly and specifically" alleges injury) to *MSPA Claims 1*, 918 F.3d at 1318 ("general factual allegations" of harm sufficient).

[19] Isaacson also cites *Clapper* and *Braitberg*, which are inapposite because in both, the defendant *did nothing* to the plaintiff. *See Macy*, 897 F.3d at 760 (analyzing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) and quoting *Spokeo*, 867 F.3d at 1118); and *Braitberg v. Charter Comm.*, 836 F.3d 925, 930 (8th Cir. 2016) (defendant just failed to delete information it lawfully obtained). Also, unlike here, neither *Clapper* nor *Braitberg* identified any congressional finding supporting the plaintiff's claimed injury. Isaacson's reliance on *Huff* is likewise misplaced because it decided standing on summary judgment (which requires proof) instead of at the pleading stage, plus it said the asserted risk be "certainly impending" when, as

The other FACTA decisions Isaacson cites are even less apposite. Like *Kamal*, the unpublished *Noble* decision only purports to evaluate the risk in the abstract, without considering Congress's judgment. *See Noble v. Nev. Checker Cab. Co.*, 726 Fed Appx. 582, 583-84 (9th Cir. Mar. 9, 2018).[20]

*Katz* did not decide the issue one way or the other. It only considered whether the district court committed "clear error" in finding the plaintiff failed to *prove* (not plead) a concrete injury in response to a *factual* challenge to standing, where the plaintiff took no discovery and presented no proof. *See Muransky II*, 922 F.3d at 1189 (citing *Katz*, 872 F.3d at 120). Here, the issue is simply whether Dr. Muransky adequately *pled* a basis for standing. *See id.*

Finally, *Bassett*, *Crupar-Weinmann*, and *Meyers* dealt with FACTA's expiration-date requirement, not the account-number truncation requirement. *Id.* (citing *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018), *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76 (2d Cir. 2017); *Meyers v. Nicolet Rest of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016)). Thus, they are inapposite because Congress found disclosing expiration dates does *not* cause harm. *Jeffries*, 928 F.3d at 1066 ("That is why our sister circuits, applying *Spokeo*, have

---

shown above, a "substantial risk" is enough. *Huff v. Telecheck Servs.*, 923 F.3d 458, 463 (6th Cir. 2019).

[20] *Noble* was also unclear as to whether it was reviewing a factual attack on standing (like *Katz*) or a facial attack (like here). *Muransky*, 922 F.3d at 1190.

unanimously concluded that a FACTA violation based solely on a failure to truncate an expiration date does not qualify as a concrete injury in fact.").

By contrast, again, Congress found a real risk of theft if the account number is not properly truncated. *Jeffries*, 928 F.3d at 1065; *Muransky II*, 922 F.3d at 1187. Consistent with that judgment, Dr. Muransky alleged Godiva's disclosure of two-thirds of his account number exposed him to an elevated risk of identity theft (not simply that "Godiva violated the statute" as Isaacson claims). [Doc. 16, ¶62].[21]

No greater detail is needed because again, the case settled at the pleading stage (*Muransky II*, 922 F.3d at 1184), and no factual challenge was made:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for … we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."

*Lujan*, 504 U.S. at 561 (citation omitted); *accord MSPA Claims 1*, 918 F.3d at 1318 ("at the pleading stage, 'general factual allegations' … will suffice") (quoting *Lujan*,

---

[21] Here again Isaacson cites *Toys "R" Us* to claim the odds of deducing Dr. Muransky's full card number from the first six and last four digits are too hard to overcome. As shown, assertions in other cases are beyond this record, Dr. Muransky was not given a chance to refute them, had the matter been raised in the district court he would have presented evidence refuting them. *See* pp.20-21, above. Plus, *Toys* did not address computerized distributed guessing attacks. *See id.*

504 U.S. at 561).[22] Thus, his exposure to this congressionally-determined "risk of real harm" satisfies Article III.

## III. The Mishandling of Dr. Muransky's Account Information Bears a Close Relationship to a Common Law Breach of Confidence

FACTA was created in part "to protect the secrecy, and, thus, the privacy of card holders' complete payment card account numbers and information." *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333 (S.D. Fla. 2009). Indeed, when signing FACTA into law, President Bush expressly noted Congress was "act[ing] to protect individual privacy." *Id.* at 1333 (*quoting* 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

Godiva breached Dr. Muransky's interest in keeping his sensitive account information secret by disclosing it on the receipt, making it available to store staff or anyone else who found it. This injury is concrete because it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S.Ct. at 1549; *see also In Re Horizon Healthcare Servs. Inc. Data Breach*, 846 F.3d 625, 638 (3d Cir. 2017)

---

[22] Citing *Lujan* and *Prado-Steinman v. Bush*, 221 F.3d 1266 (11th Cir. 2000), Isaacson claims Dr. Muransky may not rely on his pleadings at settlement because a class was certified, but neither case says that. *Lujan* does not address the issue, and *Prado-Steinman* addressed a *contested* class certification. *Id.* at 1267. Consistent with *Lujan*, if standing is not contested or put in substantial doubt, the complaint's allegations are alone are sufficient, even for class certification. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 676 (7th Cir. 2009) (at class certification, "ordinarily an unchallenged allegation of standing suffices …").

("'unauthorized disclosures of information' have long been seen as injurious.") (quoting *In re Nickelodeon Cons. Privacy Litig.*, 827 F.3d 262, 274 (3rd. Cir. 2016) (unauthorized disclosure "a clear *de facto* injury").

Specifically, a FACTA violation bears a close relationship to the tort of "breach of confidence." *Jeffries*, 928 F.3d at 1064-65; *Muransky II*, 922 F.3d at 1190-91. The tort arises from disclosure of information provided in confidence, which is exactly what FACTA prohibits by barring merchants from disclosing account information on receipts, where criminals have "easy access" to it. S. Rep. 108-166, p.3; and *see Jeffries*, 928 F.3d at 1065 ("FACTA protects against the risk of the very harm the breach of confidence tort makes actionable—an unauthorized disclosure of privileged information to a third party.").

Citing no authority, Isaacson claims breach of confidence is too new to provide a common law analog for injury because allegedly it is only about forty years old (the same as this Circuit), and allegedly it was only recognized by California and New York until recently. Both claims are wrong – the tort is one-hundred and seventy years old, and has "become the basis of an extensive body of law." Vickery, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426, 1452-53 (1982). Again, it is sufficient if an asserted harm has a close relationship to

one recognized by "English or American Courts" (*Spokeo*, 136 S. Ct. at 1549), and English courts have recognized the tort since 1849. *Id.* at 1452.[23]

Isaacson also claims a FACTA violation is not identical in kind and degree to a breach of confidence, but "close relationship" does not mean "exact" match. *Muransky*, 922 F.3d at 1191 (citing *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (a "close relationship does not require that the newly proscribed conduct would give rise to a cause of action under common law.")); and *see Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 958 (8th Cir. 2019) ("An alleged harm need not actually have been actionable at common law to satisfy this inquiry").

Relatedly, Isaacson cites *Kamal*'s suggestion that direct third-party disclosure is essential for a "close relationship" to a breach of confidence, but that is incorrect. "The harm in breach-of-confidence 'occurs when the plaintiff's trust in the breaching party is violated, *whether or not* the breach has other consequences.'" *Jeffries*, 928 F.3d at 1064-65 (quoting *Muransky II*, 922 F.3d at 1190 (italics added)). That is the case here because FACTA imposes a trust obligation to protect key account data, which Godiva breached when gave others "easy access" to it by

---

[23] American cases began mentioning the tort as early as 1894. *Id.* at 1453. Further, reported U.S. cases applying the tort date back at least to the 1950s and 60s, and are not limited to California and New York. *See Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 150 F. Supp. 143, 159 (E.D. Tex. 1956) ("The essential elements of a cause of action for breach of confidence are …"); *General Steel Prods. Co. v. Lorenz*, 204 F. Supp. 518, 539 (S.D. Fla., 1962) (same); *Great Lakes Carbon Corp. v. Cont'l Oil Co.*, 219 F. Supp. 468, 498 (W.D. La. 1963) (same).

printing it on the receipt. *Jeffries*, 928 F.3d at 1064-65 ("FACTA's truncation requirement establishes a similar relationship of trust between consumer and merchant, requiring the merchant to safeguard the consumer's credit or debit card information …"); *see also*, *e.g. Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (italics in original) (statutory violation satisfies Article III where it "codifies a context-specific *extension* of the substantive right to privacy.") (italics added).[24]

*Kamal*'s suggestion that FACTA must match the tort to be "closely related" to it is also contrary to its own circuit authority. The Court concedes it previously found a single call violating the TCPA sufficient to confer standing even though a single call is not sufficient to satisfy the tort of intrusion upon seclusion because it lacked the "persistent hounding *required* to state a claim for [that tort]." *Kamal*, 918 F.3d at 114 (italics added, citation omitted).

Finally, Isaacson claims the first six digits of the account number are not private or sensitive "enough," but again Congress found they are "key card account information" whose disclosure leads to identity theft. *See* S. Rep. 108-166 at pp.3, 13. Isaacson bases this argument on is his false claim the first six digits only identify

---

[24] Isaacson claims breach of confidence requires an actual trust relationship between plaintiff and defendant, but the lone state case it cites (*Biddle*) does not say that. Regardless, as *Jeffries* shows, FACTA meets this alleged requirement.

the card-issuing bank (see pp.20-21, above), as well as Restatement sections and cases that do not discuss breach of confidence.[25]

Finally, Goldilocks arguments about whether an asserted harm is "enough" are contrary to law because they attempt to turn the qualitative concrete injury test (harm exist?) into a quantitative test (harm enough?). *See Salcedo*, 936 F.3d at 1172-73 ("There is no minimum quantitative limit required to show injury …") (citation omitted). Again, an "identifiable trifle" of harm is sufficient. *Common Cause/Georgia*, 554 F.3d at 1351 (quoting *SCRAP*, 412 U.S. at 689, n.14). The similarity of Godiva's FACTA violation to a breach of confidence demonstrates an additional concrete injury. *See Jeffries*, 928 F.3d at 1064-65; *Muransky*, 922 F.3d at 1191.

## IV. Dr. Muransky Was Forced to Safeguard the Receipt

Godiva also injured Dr. Muransky by forcing him to spend time safeguarding the receipt, to prevent further disclosure. *See Jeffries* 928 F.3d at 1064, n.2 ("There are other indirect harms attendant on a violation of FACTA's truncation requirement. The requirement relieves consumers of having to … safeguard or destroy receipts containing too much information."); *Deschaaf v. Am. Valet & Limousine, Inc.*, 234 F.Supp.3d. 964, 970 (D. Ariz. 2017) ("the consumer must take

---

[25] He cites Restatement (Second) of Torts §652D, §652E. (1977); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 489 (1975); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95, 102 (D.C. Cir. 2019).

additional steps to ensure the safety of her identity; she may not simply crumple the receipt and throw it into a nearby trash can, but must review it to assess what was printed, hold on to it, and perhaps shred it or cut it up later.").[26]

Though less intrusive than other injuries, it is no less real, which all that is required. *See Spokeo*, 136 S.Ct. at 1548. It is also no less an imposition than being forced to show ID (which only takes a moment), or visit a courthouse rotunda "less frequently" to avoid a monument, or one's fax machine being occupied for a minute (no action required). Yet this Court found each of these injuries sufficient. *See Common Cause/Georgia*, 554 F.3d at 1351 (plaintiffs "would still have standing to challenge the statute that required them to produce photo identification to cast an in-person ballot …"); *Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003) ("the two plaintiffs who have altered their behavior as a result of the monument have suffered and will continue to suffer injuries in fact"[27]); *Palm Beach Golf Ctr.*, 781 F.3d at 1251 (fax occupied "one minute").

Furthermore, Dr. Muransky's effort to reduce the risk does not change the fact that he was exposed to the risk in the first place or spent time safeguarding the receipt to reduce the risk:

---

[26] Isaacson's prior reply brief conceded Dr. Muransky kept his receipt. (Isaacson Reply, No. 16-16486, at ECF p.20 ("He still has his receipt …").

[27] The district court observed the plaintiffs visited the rotunda "less frequently." *Glassroth v. Moore*, 229 F. Supp. 2d 1290, 1297 (M.D. Ala. 2002).

> Just as someone who replaces the pin in a grenade remains, nonetheless, *previously at risk* of getting blown up, Jeffries' effort to safeguard her receipt does not change the fact that she was prevented from using her credit card without at the same time facing exposure to increased identity theft risk.

*Jeffries*, 928 F.3d at 1066-67 (emphasis added). Once injured, the Article III inquiry ends. *Id.* at 1066 ("At the point of sale—the time at which FACTA measures liability—there was no way to know whether Jeffries would recognize Centerplate's mistake and mitigate any harm *or* whether the receipt would end up in the trash for anyone to find or otherwise be accessed by a malevolent third party (e.g., an employee or fellow customer).").[28]

Clapper is not to the contrary. That case holds one may not *choose* to incur a cost based on speculation some action *might* be taken that might cause harm, and then claim the cost is an Article III injury. *Macy*, 897 F.3d at 760 (distinguishing *Clapper*, quoting *Spokeo*, 867 F.3d at 1118). By contrast, Godiva *forced* Dr. Muransky to safeguard the receipt by *actually* memorializing his account data on it, exposing him to a real risk found by Congress. The alternatives were destroying the

---

[28] Congress took testimony confirming the dangers of making account information easier to see by "unscrupulous employees." *See* S. Hrg. 109-1087, Testimony of Mari J. Frank (May 10, 2005), p.75, https://www.gpo.gov/fdsys/pkg/CHRG-109shrg61787.pdf ("There are many ways that fraudsters obtain data about us--it may be appropriated by, stolen mail, dumpster-diving, lost or stolen wallets, shoulder surfing, burglary, friends, relatives (only about 9 percent), **unscrupulous employees**, phone fraud, Internet fraud (phishing …") (emphasis added).

receipt (itself an imposition), or discarding it (where others could find it). By contrast, *no action* forced the *Clapper* plaintiff to act. *See Clapper*, 568 U.S. at 411.

*Nicklaw* also is not to the contrary. That case involved a state law claim for failure to release a lien "within 30 days." *Ruk v. Crown Asset Mgmt., LLC*, 2017 U.S. Dist. LEXIS 41797, *18 (N.D. Ga. Mar. 22, 2017) ("*Nicklaw* involved a mere filing deadline violation with no consequence.") (citing *Nicklaw*, 839 F.3d at 1003). Neither the plaintiff nor court identified a harm caused by tardiness. By contrast, the disclosure of Dr. Muransky's account digits immediately exposed him to a congressionally-determined risk of theft. *Muransky II*, 922 F.3d at 1185 ("Dr. Muransky suffered the heightened risk of identity theft the moment Godiva printed too many digits of his credit card number.").

Finally, although there is no need to show a continued risk of harm, the release of lien in *Nicklaw* eliminated any risk going forward, whereas here the risk still exists because the receipt still exists. *See Muransky II*, 922 F.3d at 1192 ("nothing in this record establishes that the receipt no longer exists. This means the risk of disclosure still exists."); *see also Jeffries*, 928 F.3d at 1064, n.2 ("[FACTA] relieves consumers of having to worry …") (brackets added). In short, forcing Dr. Muransky to safeguard the receipt is an additional concrete injury.

## V. Dr. Muransky Was Deprived of His Substantive FACTA Rights

"The Supreme Court has repeatedly affirmed the ability of Congress to 'cast the standing net broadly' and to grant individuals the ability to sue to enforce their statutory rights." *In re Horizon*, 846 F.3d at 635 (citing, *inter alia*, *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art[icle] III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.")). *Spokeo* likewise reaffirms a statutory violation, by itself, "*can be sufficient in some circumstances to constitute injury in fact*." *Spokeo*, 136 S.Ct. at 1549 (italics added); *see also id.* at 1548 (Article III injuries include the "invasion of a legally protected interest") (citation omitted).

*Spokeo* notes a "bare *procedural* violation" may not be enough. *See id.* at 1549 (italics added); *see also In re Horizon*, 846 F.3d at 638 ("It is nevertheless clear from *Spokeo* that there are some circumstances where the mere technical violation of a *procedural* requirement of a statute cannot, in and of itself, constitute an injury in fact.") (italics added).[29] However, the *Spokeo* majority does not discuss the injury requirement in the context of *substantive* rights.

Justice Thomas's concurring opinion fills this gap, confirming that for substantive or "private" rights, the violation alone is a concrete injury:

---

[29] *Spokeo* addressed procedural statutory provisions. *See* 136 S.Ct. at 1545, citing, *inter alia*, 15 U.S.C. §1681e ("Compliance Procedures").

> Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. "Private rights" are rights "belonging to individuals, considered as individuals." 3 W. Blackstone, Commentaries *2 (hereinafter Blackstone). …. In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy.
>
> * * *
>
> **A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.** See *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–374, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act); *Tennessee Elec. Power Co. v. TVA*, 306 U.S. 118, 137–138, 59 S.Ct. 366, 83 L. Ed. 543 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege").

*Id.* at 1551 and 1553 (Thomas, J., concurring) (bold added); *see also Frank v. Gaos*, 139 S.Ct. 1041, 1047 (2019) (Thomas J, dissenting) ("a plaintiff seeking to vindicate a private right need only allege an invasion of that right to establish standing.").

The *Havens Realty* case Justice Thomas cites is instructive. A unanimous Supreme Court ruled the violation of the plaintiff's statutory right to truthful information about available housing is an "injury in fact," even though the plaintiff did not need or want the information, and interacted with the defendant *expecting* it to violate her rights:

> As we have previously recognized, "[the] actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*,

> *supra*, at 500, quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617, n.3
> (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972);
> *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972)
> (WHITE, J., concurring). Section 804(d), which, in terms, establishes
> an enforceable right to truthful information concerning the availability
> of housing, is such an enactment. A tester who has been the object of a
> misrepresentation made unlawful under § 804(d) has suffered injury in
> precisely the form the statute was intended to guard against, and
> therefore has standing to maintain a claim for damages under the Act's
> provisions. That the tester may have approached the real estate agent
> fully expecting that he would receive false information, and without
> any intention of buying or renting a home, does not negate the simple
> fact of injury within the meaning of §804(d).

*Havens Realty*, 455 U.S. at 373-74. Needless to say, one who requests information they do not actually need or want, and who expects the provider to lie and violate their rights, suffers no harm beyond the statutory violation. Nevertheless, in the substantive rights context, nothing more is required.

This Court has consistently followed *Havens Realty* to find a violation of substantive rights, by itself, satisfies Article III. First, the Court ruled a plaintiff has standing to sue about an architectural barrier under the Americans with Disabilities Act, even if the plaintiff is a tester who deliberately encountered the barrier to enable him to sue and identified no harm beyond the violation. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013) ("The substantive right conferred by the statute is to be free from disability discrimination in the enjoyment of the facility, regardless of Houston's motive for visiting the facility.").

Second, the Court followed *Havens Realty* post-*Spokeo* to hold a violation of a statutory right under the Fair Debt Collection Practices Act, by itself, is a concrete injury. *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 995 (11th Cir. July 6, 2016) (unpub.). Specifically noting the right was "substantive" (*Id.* at 995, n.2), this Court ruled "Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Id.* at 994. Likewise, here Congress created a new right – to a properly truncated receipt – and a new injury – receiving a receipt that was not properly truncated. *Altman v. White House Black Mkt., Inc.*, 2016 U.S. Dist. LEXIS 92761, *14 (N.D. Ga. July 13, 2016) ("Congress has provided Plaintiff Altman with a substantive right to receive a truncated credit card receipt.").

Third, supporting *Church*, this Court again followed *Havens Realty* to find a violation of statutory substantive rights to be a concrete injury under the Video Privacy Protection Act ("VPPA"). *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017). The VPPA "codifies a context-specific extension of the *substantive* right to privacy." *Eichenberger*, 876 F.3d at 983 (italics in original). The plaintiff alleged no harm beyond the violation, but this Court found no need to do so. *Perry*, 854 F.3d at 1340 ("Although Perry does not allege any additional harm beyond the statutory violation, the Supreme Court has made clear that our analysis does not end there."). Instead, the Court ruled the violation alone "constitutes a

concrete harm" because "[t]he structure and purpose of the VPPA supports the conclusion that it provides actionable rights." *Id.*[30]

Likewise, FACTA's structure and purpose show Congress intended it create substantive, actionable rights. FACTA confers a narrow, privately-enforceable right on a particular class of consumers – cardholders – to protect them from the real risk of theft and fraud Congress found created by memorializing more than the last five digits of their account numbers on receipts. *See Jeffries*, 928 F.3d at 1070 ("Congress has created a private duty owed personally to [Jeffries] to protect [her] information…") (Rogers, J., concurring) (citation omitted); *Amason v. Kangaroo Exp.*, 2013 U.S. Dist. LEXIS 32981, *12 (N.D. Ala. Mar. 11, 2013) ("[FACTA] create[s] a substantive right to have one's financial information protected through truncation and also provide[s] a procedural right to enforce that truncation."); *see also* S. Rep. No. 108-166 at p.3 (2003) (FACTA's purposes include "enhanc[ing] the ability of consumers to combat identity theft[.]"). Accordingly, *Havens Realty*, *Perry*, *Church*, and *Marod* confirm the violation of Dr. Muransky's substantive FACTA rights, by itself, is a concrete injury.

---

[30] *Perry* also found Article III met because the violation bore a close relationship to a privacy tort, but that was an *additional* basis for standing. By the time the Court reached the "close relationship" issue, the Court had already "conclude[d] that violation of the VPPA constitutes a concrete harm. *Id.* at 1340.

*Spokeo* does not hold otherwise. It does not change the law of standing, it agreed even a procedural violation may be sufficient, and it did not decide the case before it. *Spokeo*, 136 S.Ct at 1550 (remanding for a complete standing analysis); *In re Horizon*, 846 F.3d at 638 (*Spokeo* "does not state it is redefining the injury-in-fact requirement."); *see also Evans v. Sec'y, Fla. Dept. of Corrections*, 699 F.3d 1249, 1263 (11th Cir. 2012) (Supreme Court decisions binding until expressly overruled).

Consistent with *Havens Realty*, *Marod*, *Church*, and *Perry*, other circuits continue to recognize a violation of one's statutory substantive rights is itself a concrete injury. *Nayab v. Capital One Bank USA*, 942 F.3d 480, 490 (9th Cir. 2019) ("We have also recognized a distinction between violations of a procedural right, at issue in *Spokeo*, and a substantive right. … A violation of a substantive right invariably 'offends the interests that the statute protects.'") (quoting *Eichenberger*, 876 F.3d at 983); and *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 241 (4th Cir. 2019) (plaintiff pled a concrete injury by alleging defendant "violated his substantive rights under EFTA …"). Thus, under *Havens Realty*, *Marod*, *Church*, and *Perry*, the violation of Dr. Muransky's substantive FACTA rights is a "concrete" injury.

Isaacson's brief here does not address this injury, but his prior reply brief does. He claimed *Havens Realty* involved a concrete harm because the defendant engaged in race discrimination. But that was not the Supreme Court's analysis. It held the

plaintiff incurred an injury because the statute "establishes an enforceable right to truthful information concerning the availability of housing …," and one denied that information "has suffered injury in precisely the form the statute was intended to guard against…" *Havens Realty*, 455 U.S. at 373-74. As explained by Justice Thomas, the violation of the right is the injury, not the violation of the policy prompting its creation. *See Spokeo*, 136 S.Ct. at 1553 (Thomas, J., concurring).

Isaacson also cited *Nicklaw* but, as shown, that case just involved a procedural violation (of a 30-day deadline), not a substantive right. *See Nicklaw*, 839 F.3d at 1000. The substantive right in that case was the right to a release of mortgage, and the defendant satisfied that obligation. *Id.* at 1003.

Other cases Isaacson cites seemingly ignore their own circuit authority finding a violation of substantive rights is an Article III injury. For example, *Meyers* and *Bassett* summarily reject the idea, but without mentioning (let alone reconciling themselves with) their prior circuit authority to the contrary. *Compare Meyers*, 843 F.3d at 727, n.2 with *Bellwood v. Dwivedi*, 895 F.2d 1521, 1526-27 (7th Cir. 1990) (discussing *Havens Realty*, and finding "Congress can create new substantive rights …, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury."); and *compare Bassett*, 883 F.3d at 782 (summarily calling the distinction "arbitrary") with *Eichenberger*, 876 F.3d at 983 (finding standing because the statute "codifies a context-specific

extension of the *substantive* right to privacy") (italics in origina). In short, Isaacson does not and cannot avoid *Havens Realty*, *Perry*, *Church*, or *Marod*, which confirm Godiva's violation of Dr. Muransky's substantive FACTA rights is an additional concrete injury.

## VI.    The Amicis' Quarrel is with Congress.

The amici (a defendant in a current FACTA case and several industry trade groups) add nothing to the above analysis. They do not like FACTA, and wish to prevent future liability for willfully violating it, despite the law being on the books for more than fifteen years, and despite overwhelming merchant compliance with it. So they ask this Court to erect a new judicial barrier to an act of Congress by limiting Article III standing to only those cases presenting so-called "real world" harms, a term the amici do not define, but which they do not view to include the real risk of harm Congress found caused by violating the truncation requirement, or the other real but intangible harms above.

This would require the Court to ignore Supreme Court and this Court's authority holding Article III standing broadly includes any asserted intangible harm or risk of harm, so long as it is real, particularly when the asserted intangible harm is recognized by Congress or similar to one actionable at common law. Again, an "identifiable trifle" of injury is enough.

The amici do not justify their extraordinary ask. They hyperbolically claim FACTA has been "weaponized" and presents an existential threat to businesses, but do not point to a single case in which any defendant was forced to capitulate to a FACTA settlement to avoid "bet the company" liability (or anything close to it). The $6.3 million settlement here was a near record for a FACTA case, and there is no suggestion it represented anywhere near an existential threat to Godiva.

The statute is simple to comply with, and liability for statutory damages only attaches to a defendant whose violation is *willful*. Thus, merchants only face liability if they choose it, not for "technical" violations. *See*, *e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ("Where the defendant's alleged behavior is deliberate or intentional, we have had no problem allowing class actions to proceed.").

In any event, the amicis' quarrel is with Congress, which chose the statutory damage remedy for FACTA violations, changed the law once in response to industry concerns (temporarily, and not the truncation requirement), and has not seen fit to change it again in the decade since. Their argument belongs in that forum, not here. *See*, *e.g.*, *Alturo v. United States AG*, 716 F.3d 1310, 1314 (11th Cir. 2013) ("It is up to Congress, not the courts, to correct any perceived inequity.").

# CONCLUSION

Dr. Muransky's complaint adequately demonstrates a concrete injury in multiple ways. Isaacson does not show otherwise. The panel should be affirmed.

Dated: January 3, 2020.

Respectfully Submitted

s/ *Michael S. Hilicki*
Keith J. Keogh
Michael S. Hilicki
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092 (Main)
312.726.1093 (Fax)
Keith@KeoghLaw.com
MHilicki@KeoghLaw.com
www.KeoghLaw.com

Scott D. Owens
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret Leon Lusskin, Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
blusskin@lusskinlaw.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6). This brief contains 12,825 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and it has been prepared in a proportionally spaced font using Microsoft Word in Times New Roman, 14 point font.

By: /s/ Michael S. Hilicki

> Michael S. Hilicki
> Keogh Law, LTD.
> 55 W. Monroe St., Ste. 3390
> Chicago, IL 60603
> MHilicki@KeoghLaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that January 3, 2020, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will send notice of this filing to all parties indicated on the electronic filing receipt.

By: s/ <u>Michael S. Hilicki</u>

Michael S. Hilicki
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
MHilicki@KeoghLaw.com